

**MEISTER SEELIG & FEIN LLP**

2 Grand Central Tower
140 East 45th Street, 19th Floor
New York, NY 10017
Telephone (212) 655-3500
Facsimile (212) 655-3535
www.meisterseelig.com

Stephen B. Meister
*Partner*
Direct (212) 655-3551
Fax (646) 539-3661
sbm@msf-law.com

July 23, 2014

**Via Facsimile – (914) 390-4278 & Federal Express**
The Honorable Cathy Seibel
United States District Judge
United States Courthouse
300 Quarropas Street, Room 633
White Plains, NY 10601-4150

Re:  *U.S. ex rel. Amico et al. v. Citigroup, Inc., et al., 14 Civ. 4370 (CS) (Under Seal)*

Dear Judge Seibel:

Relators find it ironic that the Government intends to dismiss the *qui tam* complaint not because the Government, as a matter of prosecutorial discretion, does not want the *qui tam* claims to be prosecuted (doubtless what the lawmakers had in mind); but rather solely in order to deprive the relators of their statutory share of an impending settlement of those claims. That is, the Government does not truly want to exercise its prosecutorial discretion to *abandon* the *qui tam* claims—indeed, the Government vigorously threatened *prosecution* of residential mortgage back securities ("RMBS") claims against Citigroup—and has just settled them for billions of dollars. The Government's feigned interest in non-prosecution is hypocritical and disingenuous. The real question presented by the impending motion is not whether the Government should be allowed to exercise its prosecutorial discretion to abandon the *qui tam* claims; but rather whether the settlement should be adjudged to cover them. To the best of my knowledge, no court construing 31 U.S.C. § 3730(c)(2)(A) has ever considered a motion by the Government to dismiss claims it had already settled in principle.

Indeed, the U.S. Attorney contends that permitting the relators' claims to go forward would provide them with the "opportunity to claim an unearned reward,...undermine the purposes of the *qui tam* provisions...and siphon money away from the taxpayers..." Of course, there is ample authority in the False Claims Act empowering the Government to deny a relator who unfairly attempts to seize a bounty to which he is not entitled: 31 U.S.C. § 3730(e)(4)(A)(iii) denies this Court jurisdiction over a *qui tam* claim and compels its dismissal where the relator is not the "original source." Tellingly, the Government does not contend that the relators are not the original source.

In fact, the conduct of the U.S. Attorney and Citigroup since the *qui tam* complaint was filed on June 17, 2014, shows that it was the relators' complaint and the powerful evidence attached thereto that created the $7 billion settlement now underway, though the U.S. Attorney has attempted to conceal

4867-00...

| NEW JERSEY | CALIFORNIA | MASSACHUSETTS | CONNECTICUT |
|---|---|---|---|
| 2G Auer Court | Chassman & Seelig LLP | 60 State Street | Canterbury Green |
| Williamsburg Commons | 120 Broadway, Suite 300 | Suite 700 | 201 Broad Street, Suite 460 |
| East Brunswick, NJ 08816 | Santa Monica, CA 90401 | Boston, MA 02109 | Stamford, CT 06901 |
| Telephone (732) 432-0073 | Telephone (310) 576-2238 | Telephone (617) 371-2979 | Telephone (203) 883-1700 |
| Facsimile (732) 432-4282 | Facsimile (310) 576-2551 | Facsimile (617) 371-2981 | Facsimile (203) 358-4072 |

**MSF**

**MEISTER SEELIG & FEIN LLP**

*Page 2*
*7/23/2014*

that fact. The relators thus seek a fully earned reward consistent with their statutory interest in the *qui tam* claims, and the partial assignment thereof to relators effected by the *qui tam* provisions. ("The [False Claims Act] can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *United States ex rel. Stevens v. Vermont Agency of Natural Resources*, 162 F.3d 195, 201 (2d Cir. 1998) *rev'd on other grounds*, 529 U.S. 765 (2000)).

It is therefore **the U.S. Attorney** who is attempting to undermine the *qui tam* provisions by pretending the Government wishes to abandon claims it is settling for billions, while simultaneously denying relators—who played a crucial role in the multi-billion dollar settlement—their statutory share of the recovery, even though the U.S. Attorney makes no claim that the relators are not the original source.

The relators' 91-page complaint—filed under seal on June 17, 2014—represents an enormous effort by relators and includes more than 130 pages of exhibits setting forth detailed and powerful evidence of Citigroup's wrongdoing with respect to RMBS securitization trusts and "collateralized debt obligations" ("CDOs") backed by RMBS. Even more compelling is the timing of the "partial unsealing" and the vastly increased settlement offer. The immediacy of the two events—the second immediately following the first—speaks volumes. The news wires reported that as of June 13th, talks had broken down with Citigroup offering only $4 billion (and only with respect to its RMBS activities), but that suddenly on July 9th—the day after the U.S. Attorney released the *qui tam* complaint to Citigroup—Citigroup suddenly increased its previous offer of $4 billion, by $3 billion. The $7 billion deal was a massive move up by Citigroup, whose RMBS activities were only a fraction of the scope of the RMBS activities of JP Morgan Chase, which has settled similar claims for $13 billion last year. Also, suddenly, the deal now covered Citigroup's CDO activities.

Relators believe that the Department of Justice ("DOJ") missed the entire CDO issue (until reading the *qui tam* complaint) and was only focused on Citigroup's RMBS-backed securitization trusts. Indeed, the JP Morgan Chase settlement did not cover the CDOs, just mortgage backed securities.

It strains credulity that the very day after the complaint was given to Citigroup, the DOJ had a sudden break in the negotiations and reached resolution concerning a two-year old investigation, which, in contradistinction to the JP Morgan Chase deal, now would cover the CDOs focused on in the *qui tam* complaint, and yet the complaint and its detailed evidentiary attachments (including regarding CDOs) had absolutely nothing to do with the sudden meeting of the minds.[1]

While "Covered Conduct" is defined broadly and includes the *qui tam* claims, Section 12i(ii), prefaced by classic trumping language, states that the relators' *qui tam* claims are "Excluded Claims." However, if the *qui tam* claims are truly not being released, what legitimate governmental function could possibly be served by dismissing them? If the relators prevail, the U.S. will only end up with more money from Citigroup, which is what DOJ originally demanded. It would seem the only plausible purpose of dismissal is to make good on a U.S. promise to Citigroup (to dismiss the *qui tam*); which is to say, the settlement really does cover the *qui tam* claims. Indeed, Citigroup's July 14th SEC

---

[1] Though the U.S. Attorney failed to respond to my request for a copy of the settlement agreement, it appears at: http://www.justice.gov/iso/opa/resources/471201471413656848428.pdf. Notably, it is dated July 11, 2014.

*4867-001 Doc#284*



*Page 3*
*7/23/2014*

**MEISTER SEELIG & FEIN LLP**

8-K filing demonstrates that Citigroup believes the *qui tam* claims have already been dismissed.[2] Only discovery will tell us if DOJ revealed the contents of the *qui tam* complaint to Citigroup after it was filed,[3] if Citigroup agreed to exclude the *qui tam* claims because DOJ promised to get them dismissed, and whether Citigroup's sudden $3 billion increase was driven by the July 8th release of the evidence attached to the *qui tam* complaint.

Although the False Claims Act grants the U.S. the right to move for dismissal over the objections of the relator, that right is not without limits. While the U.S. Attorney's letter cites to *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003) for the proposition that the Government has an "unfettered right to dismiss," that standard is not followed in other Circuits, including the Second Circuit. The Second Circuit in *U.S. ex rel., Stevens v. Vermont Agency of Natural Resources*, approvingly cited the two-part test articulated by the Ninth Circuit in *U.S. ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998) for assessing a U.S. motion to dismiss a *qui tam* complaint. First the burden is on the Government to show that the decision to move to dismiss is rationally related to a legitimate U.S. interest. If the Government makes that showing, the burden shifts to the relator to prove that the decision was fraudulent, arbitrary, capricious or illegal. *Sequoia* at 1145.

The relators do not dispute that the Government has a legitimate interest in settling with Citigroup. But, that does not mean that the Government has a "legitimate" interest in dismissal both because the settlement can be had without dismissing the Complaint, and cutting the relators out of their statutory share flouts an act of Congress.

Regardless, the relators can make out a *prima facie* case carrying their burden under the second prong of *Sequoia*, because dismissal of the *qui tam* complaint, is at best arbitrary and capricious and at worst illegal and fraudulent. At a minimum, given the highly suspicious timing, sudden inclusion of CDO claims, yet inconsistent exclusion of the *qui tam* claims, and the stakes involved—the relators' statutory share of just the $3 billion uptick comes could reach $1 billion (31 U.S.C. § 3730(d)(2))—the Court should authorize targeted paper discovery and depositions before holding the *Sequoia* hearing.

Very truly yours,

Stephen B. Meister

cc:   Assistant U.S. Attorney, Rebecca C. Martin (by email)

---

[2] "Today's agreement resolves actual and potential civil claims by the U.S. Department of Justice (the DOJ), several state attorneys general (State AGs), and the Federal Deposit Insurance Corporation (the FDIC) relating to RMBS and collateralized debt obligations (CDOs) issued, structured or underwritten by Citi between 2003 and 2008." http://www.sec.gov/Archives/edgar/data/831001/000114420414042703/v383763_ex99-1.htm. Yet if the *qui tam* complaint is not dismissed, the relators' claims remain "potential civil claims by DOJ." Did Citigroup's army of lawyers miss—in a public filing—the relators' multibillion dollar claims or were they told they would be dismissed?

[3] The U.S. Attorney has admitted to having delivered the actual *qui tam* complaint itself to Citigroup before receiving the partial unsealing order signed by the Court.

4867-001 Doc#284



## MEISTER SEELIG & FEIN LLP

2 Grand Central Tower
140 East 45th Street, 19th Floor
New York, NY 10017
Telephone (212) 655-3520
Facsimile (212) 655-3535

### FACSIMILE TRANSMITTAL SHEET

| TO: The Honorable Cathy Seibel | FROM: Stephen B. Meister, Esq. |
|---|---|
| COMPANY: United States Courthouse | DATE: JULY 23, 2014 |
| PHONE NUMBER: | TIME: 2:44 PM |
| FAX NUMBER: (914) 390-4278 | TOTAL NO. OF PAGES INCLUDING COVER: 4 |
| RE: U.S. ex rel. Amico et al. v. Citigroup, Inc., et al., 14 Civ. 4370 (CS) (Under Seal) | CC: Rebecca C. Martin, Esq. (via e-mail: Rebecca.Martin@usdoj.gov) |

☐ URGENT    ☑ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

Per the Court's endorsed page limit order, enclosed please find letter replacing letter of July 15, 2014.

Thank you,

Stephen B. Meister

If there are any problems with this transmission or if you do not receive the number of pages indicated above, please contact the sender at 212-655-3520. Our fax number is 212-655-3535.

**IMPORTANT NOTICE:** NOTICE UNDER E-SIGN ACT: Unless specifically set forth herein, the transmission of this communication is not intended to be a legally binding electronic signature, and no offer, commitment or assent on behalf of the sender or its client is expressed or implied by the sending of this facsimile, or any attachments hereto. NOTICE OF ATTORNEY'S CONFIDENTIALITY: The material submitted herewith contains, and is intended to be a confidential transmission of information or documents from MEISTER SEELIG & FEIN LLP which is legally privileged. The materials or information enclosed are intended only for the use of the individual or entity named in this transmission sheet. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action in reliance on the contents of this transmission is strictly prohibited. If you have received this telecopy transmission in error, please notify us by telephone immediately, so that we can arrange for the return of the original documents to us at our cost.

**IRS CIRCULAR 230 DISCLOSURE:** As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not written or intended to be used (and cannot be used) by any taxpayer for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code.